UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LOIS TRENTHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.: 3:08-CV-23 |
| v. | ) (VARLAN/GUYTON) |
| | ) |
| HIDDEN MOUNTAIN RESORTS, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This employment discrimination case is before the Court on defendant Hidden Mountain Resorts, Inc.'s ("HMR's") Motion to Bifurcate [Doc. 59], in which HMR moves this Court, pursuant to Federal Rule of Civil Procedure 42(b), to bifurcate the trial in this matter so that the liability phase is separate from the determination of damages.

In the Motion to Bifurcate, HMR asserts that the evidence pertinent to the issues of liability is unrelated to the evidence concerning damages and there is no efficiency in trying the two issues together. HMR also asserts that bifurcation is needed to avoid the substantial likelihood of undue prejudice that is likely to result to defendant if the issue of damages and the issue of liability are presented in one trial. Plaintiff Lois Trentham ("Trentham") has responded in opposition [Doc. 62], asserting that this is not a case where bifurcation is warranted and there is significant overlap between the issues and the evidence pertaining to liability and the issues and the evidence pertaining to damages. Further, Trentham asserts that bifurcation will result in prejudice to Trentham, require additional expenses, and

contribute to delay in the resolution of this case. HMR has not filed a reply to Trentham's response in opposition, and the time for doing so has passed. *See* L.R. 7.1(a), 7.2. After a careful review of the parties briefs on the issue, and for the reasons set forth herein, HMR's Motion to Bifurcate [Doc. 59] is hereby **DENIED**.

**I.     Relevant Facts**

This is an employment discrimination case brought by Trentham against HMR, her former employer [*see* Doc. 1]. In her complaint, Trentham alleges that she was discharged from HMR in violation of the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621, *et seq.*; the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*; the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101, *et seq.*, as amended by 42 U.S.C. § 1981a; the Tennessee Handicap Act (the "THA"), T.C.A. § 8-50-103; the Tennessee Human Rights Act (the "THRA"), T.C.A. §§ 4-21-101, *et seq.*; and the common law of the state of Tennessee. Trentham alleges that this discharge was based on her age and because HMR regarded her as disabled because of a recent diagnoses of cancer, and HMR's desire to avoid future expenses under HMR's group health insurance [*see* Doc. 1]. HMR denies all Trentham's allegations.

Trentham has named three proposed expert witnesses whom Trentham seeks to have testify concerning the issue of damages: (1) Dr. Robert A. Bohm; (2) Jack Smith; and (3) Dr.

Alan Grossman.[1] Dr. Robert Bohm ("Dr. Bohm") is an economist identified by Trentham to testify about Trentham's economic losses. Jack Sink ("Mr. Sink") is a life care specialist identified by Trentham to testify "regarding the costs of future medical care . . . and other associated costs . . . . ," as outlined in the report by Dr. Alan Grossman [Doc. 54, p. 3]. Dr. Alan Grossman ("Dr. Grossman") is Trentham's oncologist identified by Trentham as a witness to testify with respect to her "care, diagnosis and expenses therein directly related to the damages Plaintiff has and will suffer." [*Id.*, p. 12].

## II. Analysis

HMR submits that the testimonies of the three witnesses listed above, Dr. Bohm, Mr. Sink, and Dr. Grossman, are not related to the issue of liability, but, given the nature of their anticipated testimony, are related to the issue of damages. HMR submits that the testimony of the three witnesses will be time-consuming and complex and that such testimony, if delivered in one trial prior to the jury's determination of liability, will unduly and unfairly prejudice the jury and/or confuse the jury with respect to the issue of liability and the issue of damages.

Trentham asserts that bifurcation is unnecessary in this case as it is a straightforward case with nothing novel or unusual to justify bifurcation. Trentham also contends that the evidence regarding the issue of liability and the evidence regarding the issue of damages is

---

[1] HMR has objected to the testimony of Mr. Sink and Dr. Grossman on other substantive grounds addressed in HMR's Motion for *Daubert* Hearing as to Plaintiff's Proposed Experts, Dr. Alan Grossman, Dr. Jack M. Sink and Charlie Miner [Doc. 42]. However, HMR submits that bifurcation is appropriate regardless of whether Mr. Sink and Dr. Grossman are ultimately excluded by the Court [Doc. 60, n.1].

3

inextricably linked. Further, Trentham contends that bifurcation would result in the presentation of overlapping evidence causing judicial inefficiency and delay.

Federal Rule of Civil Procedure 42(b) gives trial courts discretion to bifurcate issues and order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. Pro. 42(b). In determining whether separate trials are appropriate, a court should consider several facts, including "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) (quoting *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997)). The question of whether to bifurcate, and if so, how to bifurcate, is entirely within the discretion of the Court. *See Bath & Body Works, Inc. v. Luizer Personalized Cosmetics, Inc.*, 76 F.3d 743, 747 (6th Cir. 1996). The party seeking bifurcation has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials. *See Tuttle v. Sears, Roebuck and Co.*, No. 1:08 CV 333, 2009 WL 2916894, at *2 (N.D. Ohio. Sept. 4, 2009). A review of the authorities cited by both parties and the Court's own research reveals a divergence of opinions on the question of bifurcation in cases involving the jury's determination and consideration of the issue of liability and the issue of damages. Thus, the question for the Court really becomes how the Court deems it most efficient to fairly manage this case, what will cause the least prejudice to the parties, and what will most effectively present the evidence to the jury.

4

The testimony of Dr. Bohm and Mr. Sink primarily concerns the issue of damages. However, while Dr. Grossman's testimony also concerns the issue of damages, his testimony is likely to be necessary regarding the issue of liability, as Dr. Grossman was Trentham's oncologist before, at the time of, and after her discharge from HMR. Thus, were there to be separate trials, it is likely that evidence and testimony presented in the liability phase will need to be repeated in the damages phase in order for it to make sense for the jury.

Further, one of the reasons Trentham has alleged for her wrongful discharge was that she was diagnosed with a return, or elevation, of her cancer. This diagnosis was by Dr. Grossman. Thus, the issue of cancer, when Trentham was first diagnosed with it, how it affects her life, how it affected her work, and what HMR knew about it, among other issues, are likely to relate to both the issue of liability and the issue of damages. Trentham has also alleged that the cost of future medical treatment was one of the reasons for her discharge—thus, Trentham will likely present testimony on an estimation or explanation of such costs in the liability phase. *See, e.g., Tharpe v. Illinois Nat. Ins. Co.*, 199 F.R.D. 213, 215 (W.D. Ky. 2001) (finding that the issue of liability and the issue of bad faith were "inextricably intertwined" and denying the defendant's motion for bifurcation).

Moreover, the issues in this case—whether HMR wrongfully discharged Trentham and is liable under any of the statutes alleged by Trentham, and, if so, the amount of damages Trentham suffered and will be likely to suffer—are not unusually difficult or complex issues warranting a bifurcation. The Court has conducted trials of a similar nature in the past and finds no reason why this trial should present a particular problem regarding juror confusion

of the issues or prejudice to HMR. Counsel for the parties and the Court should be able to instruct the jury on how to properly consider the issues before it. Finally, the Court finds that bifurcation would indeed contribute to increased expenses and delay of the final resolution of this case—a factor which would affect both parties. In sum, the relationship of the issues, the repetition of the evidence, the fact that this case does not present uniquely complex or unusual issues, and the potential for increased expenses and delay, all weigh against bifurcation.

### III. Conclusion

For the reasons set forth herein, defendant Hidden Mountain Inc.'s Motion to Bifurcate [Doc. 59] is hereby **DENIED**, and the parties shall prepare for one trial at which the issue of liability and the issue of damages shall both be resolved.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>UNITED STATES DISTRICT JUDGE