UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LOIS TRENTHAM,                          )
                                        )
            Plaintiff,                  )
                                        )      No.:   3:08-CV-23
v.                                      )             (VARLAN/GUYTON)
                                        )
HIDDEN MOUNTAIN RESORTS, INC.,          )
                                        )
            Defendant.                  )


## MEMORANDUM OPINION AND ORDER

This employment discrimination case is before the Court on defendant Hidden

Mountain Resorts, Inc.'s Motion for Summary Judgment [Doc. 16].  Plaintiff brought this

action against defendant, her former employer, alleging violations of the Age Discrimination

in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621, *et seq.*; the Employment

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*; the Americans with

Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101, *et seq.*, as amended by 42 U.S.C.

§ 1981a; the Tennessee Handicap Act (the "THA"), T.C.A. § 8-50-103; the Tennessee

Human Rights Act (the "THRA"), T.C.A. §§ 4-21-101, *et seq.*; and the common law of the

state of Tennessee.

In the motion for summary judgment, defendant argues that plaintiff has failed to

establish essential elements of her claims and defendant is entitled to judgment as a matter

of law pursuant to Federal Rule of Civil Procedure 56.  *See* Fed. R. Civ. P. 56.  Defendant

also argues that even if the Court determines that plaintiff has established a prima facie case

in respect to any of her claims, defendant is entitled to judgment as a matter of law because it has articulated a legitimate, non-discriminatory reason for plaintiff's discharge and plaintiff cannot prove that this reason was a pretext for discrimination. Plaintiff has filed a response in opposition, arguing that she has established a prima facie case for all of her claims and has shown that defendant's reason for her discharge was merely pretextual.

The Court has carefully reviewed the pending motion for summary judgment [Doc. 16], the supporting, opposing, and reply briefs [Docs. 17, 28, 29, 36-1, 41],[1] the relevant documents and exhibits, and the controlling law. For the reasons set forth herein, defendant's Motion for Summary Judgment [Doc. 16] will be **GRANTED in part** and **DENIED in part**.

## I.      Relevant Facts

Defendant is a cabin rental business in Sevierville, Tennessee [Doc. 1, ¶ 2; Doc. 28, p. 1]. Plaintiff was employed by defendant as a housekeeper from September 1995 to July 2007 [Doc. 1, ¶ 6; Doc. 16-1, p. 66]. Plaintiff was age 62 at the time of her discharge [Doc. 1, ¶ 5]. Brenda Smith ("Ms. Smith") is a co-owner of defendant and was the final decision maker with respect to plaintiff's discharge [Doc. 16-4, ¶¶ 3-4]. Butch Smith ("Mr. Smith") is Ms. Smith's husband and also a co-owner of defendant [*Id.*]. Mr. Smith had no input in the decision to discharge plaintiff [*Id.*]. Betty Farley ("Ms. Farley") became

---

[1] Defendant filed a motion for leave to file a supplemental memorandum [Doc. 83]. Attached to the motion was defendant's supplemental memorandum and other supporting documentation. The Court will deny this motion as out of time for the filing of supplemental briefs, but the Court has considered the cases cited and discussed by defendant in its memorandum and the supporting documentation.

manager of housekeeping and laundry at defendant in May 2007 and was plaintiff's supervisor at the time of her discharge [Doc. 16-5, ¶¶ 3-5].

In 1985, prior to her employment with defendant, plaintiff was diagnosed with cancer and underwent a mastectomy [Doc. 16-1, p. 52]. Around February 2005, while employed with defendant, plaintiff was diagnosed with metastatic breast cancer and underwent chemotherapy treatment [Doc. 16-2, p. 97]. In January 2005, plaintiff asked Ms. Smith for a layoff for health reasons related to her cancer and the chemotherapy treatments [*Id.*, pp. 93-95, 97]. Plaintiff returned to work on April 25, 2005 [*Id.*, p. 98]. From April 2005 to July 2007, plaintiff alleges that she periodically saw an oncologist and took several days off from work for cancer-related treatments [*Id.*, pp. 97-100]. Plaintiff also alleges that from April 2005 to July 2007 she talked with Ms. Smith on several occasions about her cancer [*Id.* at pp. 95-96]. Plaintiff was laid off again in March 2007 and rehired on May 23, 2007 [*Id.*, pp. 106-08].

Upon plaintiff's rehire, in May of 2007, Ms. Farley was plaintiff's supervisor [Doc. 16-3, ¶ 4]. Plaintiff alleges that on July 18, 2007, while she was at work, her oncologist called and left word with Ms. Farley for plaintiff to call him [Doc. 16-1, pp. 80-81]. Plaintiff returned the call and the oncologist told plaintiff that her "tumor markers were highly elevated" and she would have to undergo a CAT scan the next week, on July 25, 2007 [*Id.*]. Plaintiff alleges that she went to Ms. Farley's office to advise her of the phone call and what the oncologist told her regarding her "tumor markers." [*Id.*; Doc. 1, ¶ 10]. Plaintiff also alleges that she advised Ms. Farley that she would probably need chemotherapy treatments

3

again [Doc. 1, ¶ 11]. At the meeting, Plaintiff requested both July 25 and July 27 off from work [Doc. 16-1, p. 80-81]. Ms. Farley agreed and told plaintiff to get a work release from her oncologist, which plaintiff did [Doc. 16-1, pp. 80-81; Doc. 28-12, pp. 19-23]. Ms. Farley recalls receiving the phone call from plaintiff's oncologist on July 18, 2007, recalls telling plaintiff about the phone call, and recalls that plaintiff came to her office on July 18, 2007 [Doc. 16-5, ¶¶ 7-8; Doc. 28-12, pp. 20-21]. However, Ms. Farley states that she has little recollection of what plaintiff said and does not remember whether or not plaintiff told her that her "tumor markers were up." [*Id.*].

Plaintiff worked on July 26, visited her oncologist's office on July 27, and returned to work on July 28 [Doc. 1, ¶¶ 11-13]. Upon arrival at work, plaintiff alleges that she was instructed to meet with Ms. Farley [*Id.*, ¶ 13]. At that meeting, Ms. Farley told plaintiff she was being discharged because of customer complaints, work performance issues, and because Ms. Smith thought it best that plaintiff be terminated [*Id.*; Doc. Doc. 16-5, ¶¶ 6-8]. Ms. Farley states that she had previously brought these customer complaints and work performance issues to plaintiff's attention, both verbally and in writing [Doc. 16-5, ¶¶ 5-7]. Plaintiff, however, alleges that July 28, 2007, the date she was discharged, was the first time she had heard of or been told of any such work performance issues or any customer complaints [Doc. 28-3, pp. 140-41]. Plaintiff also alleges that she did not know until discovery was under way in this case of any allegations of customer complaints or of documents indicating that plaintiff had been given verbal warnings and shown notations of customer complaints [*Id.*, p. 142; Doc. 28-4, ¶¶ 2-3].

4

Defendant has produced four documents containing plaintiff's work assignments [*see* Docs. 28-14 to 28-17]. These documents contain notations of customer complaints and instructions to plaintiff regarding her work performance [*see id.*]. Plaintiff denies ever being shown these documents after the notations were added, denies that she was informed of any of these complaints, and denies knowledge of any of the instructions relating to her work performance [Doc. 28-3, pp. 86-87, 140-43; Doc. 28-4, ¶¶ 2-3]. All but one of these documents are dated after plaintiff's conversation with Ms. Farley on July 18, 2007, in which plaintiff allegedly told Ms. Farley that her "tumor markers" were up and that she might require more chemotherapy treatments [Doc. 1, ¶¶ 10-11]. Ms. Farley states that she counseled plaintiff about the complaints and that she documented a conversation she had with plaintiff, on June 27, 2007, in which she informed plaintiff of the customer complaints [Doc. 16-5, ¶ 6]. Defendant has also produced an "Employee Warning Notice," dated July 21, 2007, in which the box labeled "Unsatisfactory Performance" is checked [Doc. 28-18]. The word "Verbal" is written in the place designated for the signatures of the employee and the supervisor in which the employee would acknowledge receiving the warning [*Id.*]. Plaintiff denies being told of or shown this document [Doc. 28-4, ¶ 3].

Ms. Farley states that she brought the work performance issues and the customer complaints about plaintiff to Ms. Smith's attention and that she spoke with Ms. Smith by telephone on July 27, 2007 to recommend that plaintiff be discharged [Doc. 16-5, ¶¶ 7-9].

Ms. Smith states that she had information from several of plaintiff's supervisors[2] regarding plaintiff's poor work attitude and that she approved of plaintiff's discharge because of the customer complaints, the work performance issues, and Ms. Farley's recommendation [Doc. 16-3, ¶¶ 7-8; Doc. 16-4, ¶¶ 4-6]. Ms. Smith also asserts that at the time of plaintiff's discharge, she had no knowledge that plaintiff's cancer had returned [*Id.*]. Plaintiff, on the other hand, asserts that Ms. Smith was aware of her cancer and that it had returned at an elevated level.

Plaintiff alleges that her discharge was based on her age and because defendant regarded her as disabled and desired to avoid future expenses under 's group health insurance [*see* Doc. 1]. Plaintiff alleges that at approximately the same time as Ms. Farley became her supervisor, plaintiff was assigned more work than other housekeepers and was required to work alone while others worked in pairs [Doc. 1, ¶ 9]. Plaintiff also alleges that two supervisors who inspected housekeeping work at defendant told plaintiff that she ought to quit working and stay home because she was sick [Doc. 28-3, p. 139; Doc. 28-12, pp. 27-28]. Plaintiff alleges that one of these supervisors told her that she used defendant's group health insurance more than any of the other employees and that this was a problem [Doc. 28-3, p. 138]. Plaintiff also alleges that Mr. Smith told a meeting of defendant's employees, attended by plaintiff, that "if people don't quit using it (the insurance) so much it would go up so much we couldn't afford it." [*Id.*, p. 134].

---

[2] These "supervisors," Malinda Ogle and Patsy Layman, are called "supervisors" by plaintiff and Ms. Farley [*see* Doc. 28-12, pp. 27-28] and "co-workers" by Ms. Smith [*see* Doc. 16-4, ¶ 4].

6

On November 14, 2007, plaintiff filed a charge of discrimination with the Tennessee Human Rights Commission (the "THRC") and with the Equal Opportunity Commission (the "EEOC") [Doc. 1]. Plaintiff was issued a right to sue letter by the EEOC on January 24, 2008 [*Id.*; Doc. 1-1]. On January 29, 2008, plaintiff filed her complaint against defendant alleging claims under the ADEA, the THRA, the ADA, the THA, and ERISA.[3] Specifically, plaintiff alleges that she was discharged because her supervisors and the owners of defendant "regarded" her as disabled due to her cancer and discriminated against her on the basis of her age [Doc. 1, ¶¶ 18-19]. Plaintiff also alleges that she was discharged in violation of ERISA because defendant had a "specific intent" to prevent her from making claims on defendant's group health insurance [*Id.*, ¶ 21]. Plaintiff also alleges claims for wrongful discharge and negligent and/or intentional infliction of emotional distress under the common law of the state of Tennessee [*Id.*].[4] Defendant has responded and denies plaintiff's allegations [Doc. 5].

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

---

[3] Defendant has admitted that it is an employer subject to the above statutes [Doc. 4, ¶ 3]. Defendant also admits that plaintiff was a participant in its Employee Welfare Benefit Plan for purposes of ERISA [*Id.*].

[4] Defendant asserts that plaintiff's wrongful termination claim (Count IV) and negligent and/or intentional infliction of emotional distress claim (Count V) are preempted by ERISA [Doc. 16; Doc. 17]. In her response, plaintiff agrees and states that she is no longer pursuing these claims [Doc. 28, p. 11, n.5]. Accordingly, the Court will not address these claims.

7

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Anderson*, 477 U.S. at 249. The judge does not weigh the evidence, judge the credibility of witnesses, nor determine the truth of the matter. *Id.* Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

8

## III.  Analysis

Plaintiff has alleged age-based discrimination claims in violation of the ADEA and the THRA.  *See* 29 U.S.C. §§ 621, *et seq.;* T.C.A. §§ 4-21-101, *et seq.*  The Tennessee legislature has made clear that the purpose of the THRA is to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964 . . . and [the ADEA] of 1967, as amended . . . ."  T.C.A. § 4-21-101(a).  Thus, the Court will apply the same analysis to plaintiff's age-based discrimination claim brought under the THRA as Plaintiff's age-based discrimination claim brought under the ADEA.  *Bender v. Hecht's Dep't Stores,* 455 F.3d 612, 620 (6th Cir. 2006) (applying the same analysis to an age-based discrimination claim brought under the THRA as an age-based discrimination claim brought under the ADEA); *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) ("Tennessee courts have 'looked to federal case law applying the provisions of the federal anti-discrimination statues as the baseline for interpreting and applying' [the THRA]") (citation omitted).

Plaintiff has also alleged disability-based discrimination claims under the ADA and the THA.  The ADA and the THA both prohibit covered employers from discriminating against qualified individuals with a disability.  *See* 42 U.S.C. §§ 12101, *et seq;* T.C.A. § 8-50-103.  The THA embodies the definitions and remedies provided by the THRA.  *See, e.g., Forbes v. Wilson County Emergency Dist. 911 Bd.*, 966 S.W.2d 417, 420 (Tenn. 1998).  Thus, similar to the Court's analysis of plaintiff's claims under the ADEA and the THRA, the Court will analyze plaintiff's claims under the THA in accordance with federal

interpretations of the ADA. *See Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000) (stating that, in analyzing a claim under the THA, a Tennessee court may "look to federal law for guidance in enforcing [Tennessee's] own anti-discrimination laws"). Lastly, plaintiff claims that defendant's decision to terminate her was a violation of ERISA. *See* 29 U.S.C. § 1140.

Claims under the ADEA, the ADA, and ERISA may be established through direct or circumstantial evidence. *See, e.g., Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547-48 (6th Cir. 2004) (stating that a plaintiff may establish discrimination based on age by direct or circumstantial evidence). Plaintiff seeks to establish her claims based on circumstantial evidence. Claims based on circumstantial evidence under the ADEA, the ADA, and ERISA are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See, e.g. Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410-11 (6th Cir. 2008) (applying the burden-shifting framework to an ADEA claim); *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (applying the burden-shifting framework to an ADA claim); *Crawford v. TRW Automotive U.S. LLC*, 560 F.3d 607, 613 (6th Cir. 2009) (applying the burden-shifting framework to an ERISA claim); *see also Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043-44 (6th Cir. 1992).

Under the burden-shifting framework of *McDonnell Douglas*, the plaintiff must first establish a prima facie case under the relevant statute. *See McDonnell Douglas*, 411 U.S. at 802; *see, e.g., Martin*, 548 F.3d at 410-11. Once the plaintiff has established a prima facie

10

case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1113-14 (6th Cir. 2001) (stating that "[a] plaintiff's burden in establishing a prima facie case is not intended to be an onerous one") (citation omitted). If the defendant makes the appropriate showing, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason was a pretext for discrimination. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-55 (1981). To establish that the defendant's reason is pretext, the plaintiff must generally show: (1) that the proffered reason has no basis in fact; (2) the reason did not actually motivate the defendant's challenged conduct; or (3) the reason was insufficient to warrant the challenged conduct. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc) (internal quotations and citation omitted).

Accordingly, the Court will first analyze whether plaintiff has stated a prima facie case under the ADEA, the ADA, and ERISA. If the Court finds that plaintiff has stated a prima facie case under any of these statutes, the Court will then analyze whether defendant has proffered a legitimate, non-discriminatory reason for the employment decision, specifically, plaintiff's discharge. If so, the Court will inquire as to whether a reasonable finder of fact could find that plaintiff has shown that this proffered reason was a pretext for discrimination.

## A.     A Prima Facie Case of Age Discrimination Under the ADEA/THRA

The ADEA makes it unlawful for employers to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To establish a prima facie case of age-based discrimination, the plaintiff must show the following: (1) membership in a protected class; (2) an adverse employment action; (3) qualification for the position of employment; and (4) that the plaintiff was replaced by someone outside the protected class. *Martin*, 548 F.3d at 410. The plaintiff can satisfy the fourth prong by showing that the plaintiff was "treated differently from similarly situated employees outside the protected class." *Id.* (quoting *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004)).

In this case there is no dispute regarding the first prong—that plaintiff was over the age of 40 when she was discharged and that she was within the protected class. The second prong is also satisfied, as there was undisputedly an adverse employment action, specifically, plaintiff's discharge from defendant. Neither party has asserted that plaintiff was unqualified for her position as housekeeper, despite defendant's assertions that plaintiff's work performance was poor, and therefore, there is also no dispute regarding the third prong, that plaintiff was qualified for her position as a housekeeper. The dispute lies with the fourth prong of plaintiff's prima facie case.

Defendant asserts that plaintiff cannot establish the fourth prong because defendant did not hire anyone to replace plaintiff outside of the protected class and there were no similarly situated employees that were treated differently than plaintiff. Plaintiff asserts that she has satisfied the fourth prong by showing that she was treated differently and less favorably than two similarly situated employees outside of her protected class, specifically,

12

Ashley Johnson ("Johnson"), who was 18 when she was hired in 2005, and Ryan Barido ("Barido"), who was 23 when he was hired in 2005 [Doc. 36-3; Doc. 36-4]. Plaintiff alleges that Johnson and Barido were similarly situated employees whose work history records with defendant indicate work performance issues, warnings of suspension, and various layoffs, but who, unlike plaintiff, were not discharged.

A plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated." *Pierce v. Commonwealth Life, Ins., Co.*, 40 F.3d 796, 802 (6th Cir. 1994). To satisfy the similarly situated requirement, the plaintiff must only demonstrate that the comparable employee is similar "in all relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). One court has stated that for a court to deem various employers "similarly-situated," the court should "make an independent determination as to the relevance of a particular aspect of the plaintiff's employment status and that of the non-protected employee" as opposed to assuming that only specific factors must be present for a court to find an employee similarly situated. *Gibson v. Shelly Co.*, 314 F. Appx. 760, 771 (6th Cir. 2008) (noting that the comparable employees do not necessarily have to have dealt with the same supervisor or been subject to the exact same standards).

Of the two workers whom plaintiff alleges were treated more favorably, the Court does not find, even with the relatively light showing required for establishing a prima facie

13

case,[5] that Barido was similarly situated to plaintiff. While Barido was indeed younger than plaintiff and his work history shows several warnings about his work performance, Barido did not work in housekeeping or in stayovers,[6] but worked in maintenance and construction, a different department with different duties and responsibilities [Doc. 36-4]. Moreover, Ms. Farley never supervised Barido [Doc. 41-1, ¶ 3].

While the Court disagrees with plaintiff that Barido was similarly situated, the Court agrees that Johnson may be considered a similarly situated employee for purposes of the fourth prong of plaintiff's prima face case. Johnson was younger then plaintiff and is listed as an employee in the housekeeping department of defendant [Doc. 36-3]. Johnson's work history records also indicate a number of work performance violations including poor attendance, un-excused absences, and warnings related to the quality of her work [*Id.*]. While the Court notes that Ms. Farley was not Johnson's supervisor at all relevant times of her warning notations, Ms. Farley was her supervisor at the time of several of Johnson's violations. Moreover, Ms. Farley was not the final decision maker in regards to employee discharge at defendant—Ms. Farley only made recommendations to Ms. Smith who, as owner, had final decision making authority at defendant. While a correlation between supervisors of the subject employees is relevant to the Court's analysis, the Court must

---

[5] The prima facie showing requirement is not onerous, as mandated by the United States Supreme Court in *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

[6] According to Defendant, employees who work in "housekeeping" are distinguishable from employees who work in "stayovers" [*see* Doc. 29, ¶ I]. Plaintiff alleges that "stayovers" work is a part of housekeeping work [Doc. 36-1, p. 4].

14

consider that discharge decisions at defendant were not made by direct supervisors but, at least for housekeeping positions, by Ms. Smith. *See, e.g., Gibson*, 314 F. Appx. at 771 (noting that a committee, and not the employee's direct supervisor, made the termination decision).

Ms. Farley states that she considers attendance issues to be distinct from unsatisfactory job performance issues and therefore Johnson's work performance violations and warnings are different than plaintiff's [Doc. 41-1, ¶ 7]. However, in determining whether Johnson was similarly situated, the Court will not engage in defining the relevant factors making one employee similar to another based on an overly narrow application of the similarly situated standard or on the specific employee's narrow job functions. Similarly, the Court will not narrowly categorize the different types of disciplinary violations levied against plaintiff as opposed to those levied against Johnson. *See, e.g., Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 397-98 (6th Cir. 2008) (discussing and narrowly applying the similarly situated requirement when there was a relatively small number of employees with whom the plaintiff could be compared). Because Johnson's work history records indicate a number of violations and warnings, and because, unlike plaintiff, Johnson was not discharged, the Court finds that Johnson, a similarly situated employee, was treated differently than plaintiff for purposes of the prima facie case. Accordingly, plaintiff has established a prima facie case for age-based discrimination under the ADEA and the THRA.

15

## B.     A Prima Facie Case Under the ADA/THA

The ADA prohibits covered employers from discriminating against qualified individuals with a disability.  *See* 42 U.S.C. §§ 12101, *et seq; see also* T.C.A. § 8-50-103.[7] The ADA provides, in relevant part that:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee consideration, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).  To state a prima facie case of discrimination under the ADA, the plaintiff must establish that: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to perform the requirements of his or her job; and (3) the plaintiff was discharged solely by reason of his or her disability.  *See Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002).  The plaintiff may establish the first prong if the plaintiff (1) has a physical or mental impairment that substantially limits one or more of the plaintiff's major

---

[7] As stated above, the THA embodies the definitions and remedies provided by the THRA and will thus be analyzed in accordance with federal law.  *Forbes*, 966 S.W.2d at 420.  The THA is substantially similar to the ADA and prohibits:

> [D]iscrimination in the hiring, firing and other terms and conditions of employment . . . of any private employer, against any applicant for employment based solely upon any physical, mental or visual handicap of the applicant, unless such handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved.

T.C.A. § 8-50-103(a).  A plaintiff alleging discrimination under the THA must show: (1) that the plaintiff was qualified for the position; (2) that the plaintiff was disabled; and (3) that the plaintiff suffered an adverse employment action because of that disability.  *See Barnes*, 48 S.W.3d at 705.

16

life activities; (2) the plaintiff has a record of such impairment; or (3) the plaintiff is regarded by an employer as having such an impairment. *Gruener v. Ohio Cas. Ins. Co.,* 510 F.3d 661, 664 (6th Cir. 2008) (citing *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999)) (quotations omitted); *see also* 42 U.S.C. §§ 12102(2)(A)-(C).

In this case, the ADA's "regarded as" disabled definition of disability is at issue. *See* 42 U.S.C. § 12102(3). This "regarded as" definition protects employees who are able to perform their job but who are "rejected . . . because of the 'myths, fears and stereotypes' associated with disabilities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489-90 (1999) (internal quotations and citations omitted). Thus, as stated by the United States Court of Appeals for the Sixth Circuit, the "regarded as" disabled definition requires that the employer "entertain misperceptions about [the employee]." *Sutton*, 527 U.S. at 489; *see also Gruener*, 510 F.3d at 664. The "regarded as" definition of disability will apply when (1) an employer mistakenly believes that an employee has a physical impairment that substantially limits one or more of the employee's major life activities, or (2) an employer mistakenly believes that an actual, non-limiting impairment substantially limits one or more of the employee's major life activities. *Sutton*, 527 U.S. at 489; *see also Gruener*, 510 F.3d at 664.

Plaintiff's case falls within the second application of the "regarded as" definition. Because of her cancer and chemotherapy treatments, plaintiff had previously asked Ms. Smith for a lay off. Following her rehire, plaintiff alleges that she went periodically and sometimes weekly to receive chemotherapy treatments and that Ms. Smith, the final decision maker regarding plaintiff's termination, and Ms. Farley, plaintiff's supervisor, were aware

17

of her cancer. Plaintiff also alleges that she specifically told Ms. Farley on July 18, 2007 that her cancer levels were "elevated" and that she might have to undergo chemotherapy. Plaintiff also alleges that two of her supervisors told her that she ought to quit work and stay home because she was sick [Doc. 28-3, p. 139; Doc. 28-12, pp. 27-28]. Finally, plaintiff alleges that one of these supervisors told her that she had used defendant's health insurance more than any of the other employees and that this was a problem [Doc. 28-3, p. 138].

Taking all inferences in a light most favorable to plaintiff, she has established a prima facie case of discrimination under the ADA. It could be inferred that Ms. Smith was aware that plaintiff had cancer and that Ms. Farley was aware that plaintiff's cancer was elevated and that plaintiff was again expecting to receive chemotherapy treatments. It can also be inferred that, as a result of this cancer, plaintiff was "regarded as" disabled by Ms. Farley, Ms. Smith, and others at defendant and, based on this perception, plaintiff was discharged. Defendant argues that plaintiff has not shown that defendant "regarded" plaintiff as disabled, but, at the least, only that Ms. Farley and Ms. Smith knew that plaintiff had cancer. *See Simpson v. Vanderbilt. Univ.*, No. 08-6548, 2009 WL 4981684, at * 5 (6th Cir. Dec. 22, 2009); *see Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 569 (6th Cir. 2009) (stating that "the defendants were aware of [the plaintiff's] health issues does not support a conclusion that they misperceived [her] physical disabilities as impaired and affecting her performance"). However, plaintiff has also alleged that she was told by two supervisors that she was sick and that she should just "stay home" [Doc. 28-3, p. 139; Doc. 28-12, pp. 27-28] and that she was given more work assignments than other employees [Doc. 28-3, pp. 79-82,

18

90-92].  This at least raises the inference and helps support plaintiff's prima facie case that those in supervisory positions "regarded" her as disabled.

## C.    A Prima Facie Case Under ERISA

Plaintiff also claims that defendant's decision to discharge her was a violation of ERISA.  *See* 29 U.S.C. § 1140.  Plaintiff's claim under ERISA falls under § 510 of ERISA, which provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140.   *Coomer v. Bethesda Hosp.*, 370 F.3d 499, 506 (6th Cir. 2004).  Thus, ERISA prohibits employers from retaliating against an employee who avails himself or herself of an ERISA right and prohibits employers from interfering with an employee's attainment of an ERISA right   *Id.*; *see* 29 U.S.C. § 1140.

In order to establish a prima facie case under § 510 of ERISA, the plaintiff must show that (1) the plaintiff availed herself or himself of a protected right under ERISA; (2) the plaintiff was adversely affected by an employment action; and (3) there was a causal connection between the exercise of the protected right and the adverse employment action. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001); *Humphreys*, 966 F.2d at 1043.  In proving the causation prong of the prima face case, the plaintiff must show that the employer had the specific intent to violate ERISA when it took the employment

19

action that adversely affected the plaintiff. *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997)*; see also Majewski*, 274 F.3d at 113. In other words, "a motivating factor in the defendant's action was the purpose of interfering with the plaintiff's entitlement to benefits" under ERISA. *Abbot v. Pipefitters Lcoal Union No. 522 Hosp., Medical, & Life Ben.*, 94 F.3d 236, 242 (6th Cir. 1996).

Plaintiff has established the first and second prongs. However, plaintiff has not established the third prong, the requirement that there be a causal connection between her exercise of the protected right—i.e., receiving health insurance benefits under defendant's group health insurance plan—and her discharge. Plaintiff argues that because she was discharged shortly after her supervisor and the co-owners of defendant became aware of the elevation of her cancer, the close proximity between this awareness of the diagnosis and her discharge is sufficient to show causation. The Court does not agree.

While evidence that an adverse employment action was taken shortly after a plaintiff's exercise of protected rights is relevant to the issue of causation, Sixth Circuit law on this particular point is far from uniform, with some cases suggesting that temporal proximity may be enough,[8] and other cases suggesting proximity alone may never be enough.[9] *See Hamilton*

---

[8] *DiCarlo v. Potter*, 358 F.3d 408, 421-22 (6th Cir. 2004) (holding that a 21-day period showed causation); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (noting that proximity may be significant to constitute indirect evidence of causation).

[9] *Chandler v. Specialty Tires of America*, 283 F.3d 818, 826 (6th Cir. 2002) (noting that proximity alone may not survive summary judgment, nor does it necessarily imply causation); *Dunn v. Elco Enters.*, No. 05-71801, 2006 WL 1195867, at *5 (E.D. Mich. May 4, 2006) (stating that proximity alone does not necessarily imply causation) (quotation and citation omitted).

*v. Starcom Mediavest Group, Inc.*, 522 F.3d 623 (6th Cir. 2008). However, regardless of whether proximity may be enough, plaintiff has not stated sufficient evidence for the Court to infer that plaintiff's exercise of her rights under ERISA was even considered by those at defendant with the authority to discharge her—namely, Ms. Farley, who made the recommendation, and Ms. Smith, who made the final decision. Thus, the Court does not find it necessary to reach the proximity question.

Plaintiff alleges that about six months to a year before she was discharged, Mr. Smith, Ms. Smith's husband and a co-owner of Defendant, commented in an employee meeting that if the employees didn't quit using the group health insurance as much, the cost of the insurance would go up so high defendant would not be able to afford it [Doc. 28-3, pp. 134, 137]. Plaintiff also alleges that one of her supervisors told her that employees at defendant were using the insurance too much and that this was a problem [Doc. 28-3, p. 138]. However, plaintiff has stated that neither of these comments were directed at her personally [*Id.*]. Moreover, Mr. Smith did not have a role in making the final decision regarding plaintiff's discharge and plaintiff has not alleged that the supervisor who made the comment about the health insurance had a role in her discharge [Doc. 28-3, p. 138].

Thus, plaintiff has not alleged sufficient facts conveying any "specific intent" on the part of Ms. Smith or Ms. Farley to avoid ERISA liability when plaintiff was discharged. The facts presented in this case are unlike the case in which the plaintiff was told specifically that the employer "could not afford the expense of his medical treatments" shortly before the plaintiff was terminated. *See Boles v. Polyloom Corp.*, 459 F. Supp. 2d 647 (E.D. Tenn.

2006). Rather, plaintiff was never personally informed by anyone involved in making a decision about her discharge of any expenses or costs associated with plaintiff's use of defendant's group health insurance plan. Without more evidence of a "specific intent," the Court concludes that plaintiff has failed to establish a prima facie case as to her ERISA claim and defendant is entitled to summary judgment as a matter of law on this claim.

**D.      Defendant's Legitimate, Non-discriminatory Reason for Plaintiff's Discharge**

Because plaintiff has established a prima facie case of discrimination under both the ADEA and the ADA, the burden shifts to defendant to proffer a "legitimate, non-discriminatory reason" for its discharge of plaintiff. *McDonnell*, 411 U.S. at 802. Defendant asserts that plaintiff was discharged because of poor work performance and customer complaints. Defendant has produced documents supporting these assertions. Ms. Farley and Ms. Smith both state that plaintiff was advised of the customer complaints and given warnings regarding her work performance. Ms. Farley states that she discussed plaintiff's work performance issues with both Ms. Smith and plaintiff. Plaintiff, however, denies any knowledge and denies discussing any such issues with Ms. Farley. Plaintiff also denies being shown any documents relating to such issues. Ms. Smith asserts that she approved Ms. Farley's recommendation that plaintiff be discharged after hearing complaints by Ms. Farley and information from other supervisors about plaintiff's poor work attitude. Ms. Smith denies any knowledge that plaintiff's cancer had returned and Ms. Farley states that she did not remember or was unaware of plaintiff's elevated cancer levels. Plaintiff states that she told both Ms. Smith and Ms. Farley that her cancer had returned at elevated levels and that

22

she informed Ms. Farley that her "tumor markers" were elevated. Both Ms. Smith and Ms. Farley deny that age or disability were grounds for plaintiff's discharge.

Based on what is related above, there are clearly disputed issues of material fact in regard to whether Ms. Smith and Ms. Farley were aware of plaintiff's elevated cancer and whether plaintiff had any knowledge of any customer complaints and work performance violations. If so, given these facts, this evidence, and the sequence of events leading up to plaintiff's discharge, the Court finds that a reasonable jury could infer that defendant's proffered reason for the discharge—poor job performance and customer complaints— was pretextual. Thus, the circumstantial evidence offered by plaintiff could indicate that she was terminated as a result of her age and because the supervisors and owners of defendant "regarded" her as disabled. Accordingly, plaintiff has presented sufficient evidence to raise issues of fact as to defendant's motivations for her discharge. Since plaintiff has adequately established pretext for purposes of surviving a motion for summary judgment, summary judgment is not appropriate as to plaintiff's claims under the ADEA/THRA and the ADA/THA.

### IV.    Conclusion

Accordingly, and for the reasons stated herein, defendant's Motion for Summary Judgment [Doc. 16] will be **GRANTED in part** and **DENIED in part**. Plaintiff has failed to establish a prima facie case as to her ERISA claim and this claim shall be **DISMISSED with prejudice**. Plaintiff has stated sufficient facts so as to raise genuine issues of material fact as to her claims under the ADEA/THRA and the ADA/THA. Defendant's Motion for

23

Leave to File Supplemental Memorandum [Doc. 83] is also hereby **DENIED**.  The parties

shall prepare for trial.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE