| | | |
|---|---|---|
| LOIS TRENTHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.:  3:08-CV-23 |
| v. | ) | (VARLAN/GUYTON) |
| | ) | |
| HIDDEN MOUNTAIN RESORTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This litigation is an employment discrimination action between plaintiff, Lois Trentham, and defendant, Hidden Mountain Resorts, Inc.  Presently before the Court are three post-trial motions filed by defendant [Docs. 111, 113, 117].  The first motion is defendant's Motion for Judgment Notwithstanding the Verdict, or in the Alternative, For a New Trial [Doc. 111].  Plaintiff has responded in opposition [Doc. 121], and defendant has filed a reply [Doc. 126].  The second motion is defendant's Motion for New Trial or to Alter/Amend Judgment [Doc. 113].  Plaintiff has responded in opposition [Doc. 122], and defendant has filed a reply [Doc. 127].  The third motion is defendant's Motion for New Trial Pursuant to Fed. R. Civ. P. 59 and 49 [Doc. 117].  Plaintiff has responded in opposition [Doc. 124].  There has been no reply by defendant and the time for doing so has passed.  *See* E.D. TN. LR 7.1(a), 7.2.  The motions are all ripe for determination and the Court now addresses the arguments contained within each.

## I. Background and Relevant Facts

Defendant is a cabin rental business. Plaintiff was employed as a housekeeper at defendant from September 1995 until her discharge on July 28, 2007, at age 62. Plaintiff was diagnosed with cancer and underwent a mastectomy prior to her employment with defendant. Around February 2005, while plaintiff was employed with defendant, she was again diagnosed with cancer and underwent chemotherapy treatment. In January 2005, plaintiff requested a layoff from Brenda Smith ("Ms. Smith"), co-owner of defendant, for health reasons related to plaintiff's cancer and chemotherapy treatments. Plaintiff returned to work with defendant in April 2005. From April 2005 to July 2007, plaintiff periodically saw an oncologist and took several days off from work for cancer-related treatments. Plaintiff was again laid off in March 2007 and rehired for a second time in May 2007. Following plaintiff's second rehire, in May 2007, Betty Farley ("Ms. Farley") was her supervisor. Ms. Smith, however, retained ultimate decision making authority in regard to discharges of employees such as those in plaintiff's position.

On July 18, 2007, plaintiff's oncologist called defendant and left word with Ms. Farley for plaintiff to call him back. Plaintiff returned the call, at which time her oncologist told her that her "tumor markers" were highly elevated and she would need to undergo a CAT scan the following week. Plaintiff went to Ms. Farley's office, advised her of the phone call, told her about the oncologist's statement regarding her "tumor markers," and advised Ms. Farley that she would probably require more chemotherapy treatments in the future. Plaintiff also requested two days off from work the following week to visit her oncologist

2

and receive cancer-related treatments. Ms. Farley was able to recall the telephone call from the oncologist and plaintiff's visit to her office. However, Ms. Farley also stated she had little recollection of what plaintiff said or what plaintiff meant by her "tumor marker" comment.

The following week, on July 27, 2007, plaintiff went to her oncologist. The next day, on July 28, 2007, Ms. Farley told plaintiff she was being discharged because of customer complaints, work performance issues, and because Ms. Smith, the ultimate decision maker in regard to plaintiff's employment, thought it best that plaintiff be discharged. In pre-trial pleadings and at trial, plaintiff denied that she knew or was ever advised of work performance issues or any customer complaints against her and she denied ever seeing documents indicating she had work performance issues or documents with notations of complaints or warnings. Defendant, however, maintained that the customer complaints and work performance issues had previously been brought to plaintiff's attention, both verbally and in writing, and that the complaints and work performance issues were the reasons for her discharge.

On January 29, 2008, plaintiff filed a complaint in this Court alleging employment discrimination claims under the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621, *et seq.*; the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*; the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101, *et seq.*, as amended by 42 U.S.C. § 1981a; the Tennessee Handicap Act (the "THA"), T.C.A. § 8-50-103; the Tennessee Human Rights Act (the

"THRA"), T.C.A. §§ 4-21-101, *et seq.*; and the common law of the state of Tennessee [*see* Doc. 1]. Defendant filed a motion for summary judgment [*see* Doc. 16] on all plaintiff's claims.[1] The Court granted in part and denied in part the motion for summary judgment, dismissing plaintiff's ERISA claim and finding that plaintiff had stated sufficient facts so as to raise genuine issues of material fact as to her claims under the ADEA/THRA and the ADA/THA [*see* Doc. 86].[2]

The case proceeded to trial. At the close of plaintiff's proof, defendant made a motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a), as to

---

[1] In her response to defendant's motion for summary judgment, plaintiff stated that she was no longer pursuing her claims for wrongful termination or negligent/intentional infliction of emotional distress [Doc. 28, p. 11, n.5]. Accordingly, these claims did not go to trial and the Court does not address these claims herein.

[2] The Tennessee legislature has stated that the purpose of the THRA is to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964 . . . and [the ADEA] of 1967, as amended . . . ." T.C.A. § 4-21-101(a). Accordingly, the same analysis applies to plaintiff's age discrimination claim under the THRA as plaintiff's age discrimination claim under the ADEA. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006) (applying the same analysis to an age discrimination claim brought under the THRA as an age discrimination claim brought under the ADEA); *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) ("Tennessee courts have 'looked to federal case law applying the provisions of the federal anti-discrimination statues as the baseline for interpreting and applying' [the THRA]") (citation omitted).

In addition, the ADA and the THA both prohibit covered employers from discriminating against qualified individuals with a disability, *see* 42 U.S.C. §§ 12101, *et seq.*, T.C.A. § 8-50-103, and the THA embodies the definitions and remedies provided by the THRA. *See, e.g., Forbes v. Wilson County Emergency Dist. 911 Bd.*, 966 S.W.2d 417, 420 (Tenn. 1998). Thus, similar to the Court's analysis of plaintiff's claims under the ADEA and the THA, the same analysis applies to plaintiff's claims under the THA as that applied to plaintiff's claims under the ADA. *See Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000) (stating that, in analyzing a claim under the THA, a Tennessee court may "look to federal law for guidance in enforcing [Tennessee's] own anti-discrimination laws").

plaintiff's claim under the ADA/THRA that defendant regarded her as disabled.  Defendant renewed this motion at the close of the four-day trial and prior to the submission of the case to the jury.  The Court denied the renewed motion. The jury returned a verdict for plaintiff on her claims under the ADA/THA and the ADEA/THRA [*see* Doc. 100].  The jury also found that defendant had willfully violated the laws against age discrimination and that plaintiff was entitled to punitive damages  [*see id.*].  Following the verdict, the jury determined, in a separate phase, the amount of punitive damages [*see* Doc. 105].

## II.    Analysis

Following the jury verdict and the jury's determination of punitive damages, defendant timely renewed its motion for judgment as a matter of law by moving for a judgment notwithstanding the verdict, or, alternatively, a new trial pursuant to Federal Rule of Civil Procedure Rule 59(a) [Doc. 111].  *See* Fed. R. Civ. P. 50(b); Fed. R. Civ. P. 59(a). In this motion, defendant asserts that it is entitled to judgment notwithstanding the verdict or a new trial on plaintiff's claim that she was regarded as disabled under the ADA/THA because there was no legally sufficient basis for a reasonable jury to find for plaintiff on that issue.  Defendant also asserts that it is entitled to a new trial because the Court erred in admitting the testimony of Dr. Alan Grossman ("Dr. Grossman") regarding plaintiff's history and current condition of cancer and because the Court erred in refusing to included defendant's proposed jury instruction on the "same actor" inference.

Defendant also filed a separate motion for new trial, or, alternatively, motion to alter/amend judgment pursuant to Rule 59(a) of the Federal Rules of Civil Procedure [Doc.

113]. In this motion, defendant asserts that it is entitled to a new trial because the jury's verdict on plaintiff's claim of age discrimination was against the weight of the evidence. *See* Fed. R. Civ. P. 59(a). Alternatively, and pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, defendant requests that the Court alter or amend the judgment in favor of defendant as to plaintiff's claim of age discrimination. *See* Fed. R. Civ. P. 59(e).

Defendant also filed a motion for new trial pursuant to Rule 59 and Rule 49(b)(4) of the Federal Rules of Civil Procedure [Doc. 117]. *See* Fed. R. Civ. P. 59; Fed. R. Civ. P. 49(b)(4). In this motion, defendant asserts that the answers making up the jury's verdict are internally inconsistent and inconsistent with the Court's instructions.

### A. Standards of Review

A motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) may be renewed after entry of judgment. Fed. R. Civ. P. 50(b). "The motion may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (citations omitted). Notably, the Court may not "reweigh the evidence or assess the credibility of witnesses." *Radvansky*, 496 F.3d at 614 (citations omitted). In making a renewed motion for judgment as a matter of law, a party may also include an alternative request for a new trial under Federal Rule of Civil Procedure 59. *See* Fed. R. Civ. P. 50(b). Rule 59(a) provides in part that the "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has

been a trial by jury, for any of the reasons for which new trials havetofore been granted . . . ." Fed. R. Civ. P. 59(a). "A trial court should deny a motion for new trial 'if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact.'" *Powers v. Bayliner Marine Corp.*, 83 F.3d 789, 796 (6th Cir), *cert. denied*, 519 U.S. 992 (1996) (quoting *Wayne v. Village of Sebring*, 36 F.3d 517, 525 (6th Cir. 1994), *cert. denied*, 514 U.S. 1127 (1995)).

Defendant also requests relief under Federal Rule of Civil Procedure 59(e), which permits the filing of motions to alter or amend a judgment. Fed. R. Civ. P. 59(e). "A district court may grant a Rule 59(e) motion to alter or amend judgment only if there is: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).

### B.    Plaintiff's "Regarded as" Disabled Claim Under the ADA/THA

To state a prima facie case of disability discrimination under the ADA/THA, the plaintiff must establish that: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to perform the requirements of his or her job; and (3) the plaintiff was discharged solely by reason of his or her disability. *See Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002). A plaintiff may establish the first prong of a prima facie case by proving that he or she was "regarded as" disabled by his or her employer. *See* 42 U.S.C. § 12102. An employee is "regarded as" disabled under the ADA/THA if his or her employer

(1) mistakenly believes that the employee has a physical impairment that substantially limits one or more major life activities, or (2) mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. *Mahon v. Crowell*, 295 F.3d 585, 592 (6th Cir. 2002) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)).

Defendant argues that there was no legally sufficient evidentiary basis for a reasonable jury to find for plaintiff on the issue that she was "regarded as" disabled under the ADA/THA or that defendant made the decision to discharge plaintiff in July 2007 based on this belief. Accordingly, defendant requests a new trial on this claim or entry of judgment as a matter of law. Defendant argues that plaintiff presented no evidence at trial that Ms. Smith was advised or was aware of plaintiff's increased "tumor markers," and that, even if the Court determines that the evidence supported plaintiff's claims that Ms. Farley was aware of her increased "tumor markers," the evidence at trial was insufficient to establish that defendant regarded plaintiff as disabled. Defendant also argues that while Ms. Smith and Ms. Farley were aware that plaintiff had cancer and related health problems, mere knowledge of her health problems is insufficient to establish the evidence necessary to support plaintiff's "regarded as" allegations. *See Simpson v. Vanderbilt Univ.*, No. 08-6548, 359 Fd. App'x 562, 2009 WL 4981684 (6th Cir. Dec. 22, 2009).

The Court agrees that an employer's mere knowledge of an employee's health problems is insufficient to establish that an employer regarded an employee as disabled. However, in this case, defendant's knowledge of plaintiff's cancer was accompanied by other

evidence by which the jury could have inferred and reasonably concluded that defendant regarded plaintiff as disabled within the meaning of the ADA/THA. In its argument that the evidence was insufficient to establish plaintiff's "regarded as" claim, defendant analogizes the holding and the facts of *Simpson* to the facts of this case, and asserts that while Ms. Farley and Ms. Smith may have known of plaintiff's cancer, there was no evidence that either of them or any other employee regarded plaintiff as disabled. The Court has carefully considered *Simpson*, its holding and its facts, and agrees that the issue is close. However, after a thorough review, the Court concludes that the facts of *Simpson* and the facts of this case are sufficiently distinguishable and, unlike the plaintiff in *Simpson*, the plaintiff in this case presented sufficient evidence by which a reasonable jury could have inferred that defendant regarded plaintiff as disabled.

A review of the facts in *Simpson* is helpful. The plaintiff in *Simpson*, a nurse, had a history of health issues, including sleep problems and paroxysmal cardiac arrhythmia, fatigue, and hypertension. *Simpson*, 2009 WL 4981684 at *1. The *Simpson* plaintiff also had a history of interpersonal conflicts with coworkers, his supervisors, and other nurses during the year prior to the plaintiff's discharge, with at least one of these conflicts verging on a physical altercation. *Id.* The impetus for the plaintiff's discharge arose from an incident in which the plaintiff had an argument and physical altercation with his supervisor after the plaintiff requested permission to leave work early because he felt ill. *Id.* at *1-*2. Immediately following this incident, and after receiving permission to leave work early from another supervisor, the plaintiff left, but without properly performing his electronic charting

duties for his patients.  *Id.*  The employer then placed both the plaintiff and the supervisor with whom the plaintiff had the altercation on administrative leave pending an investigation. *Id.* at *2-*3.  The plaintiff's employer then reviewed the records of the patients under the plaintiff's care, ultimately determining that the plaintiff had failed to properly complete his electronic charting duties.  *Id.*  The plaintiff conceded that the electronic charting of his patients was incomplete but asserted that he properly cared for his patients and kept handwritten records, which his supervisor failed to review.  *Id.* at *2.  The employer then discharged the plaintiff for the stated reason of failing to properly chart his patients on the night of the incident.  *Id.* at *3.  The supervisor with whom the plaintiff had the altercation was discharged for the same reason.  *Id.*  The plaintiff then filed suit against his employer, alleging, among other claims, that his discharge constituted unlawful discrimination under the ADA.  *Id.*  The district court granted summary judgment in favor of the employer on the plaintiff's ADA claim because it found that the plaintiff had failed to raise a genuine issue of material fact as to whether his employer regarded him as disabled.  *Id.*  The U.S. Court of Appeals for the Sixth Circuit affirmed that finding.  *Id.* at *5.

At first blush, the facts in *Simpson* appear similar to the facts of this case.  However, upon closer analysis, and noting that this issue comes before the Court on a judgment for a matter of law following a jury verdict in plaintiff's favor, the Court finds that sufficient evidence was presented by which the jury could have inferred that defendant regarded plaintiff as disabled and that such a belief was the reason for plaintiff's discharge.  Defendant is correct that there was no direct evidence that Ms. Smith, the ultimate decision maker, was

advised or knew of plaintiff's comment to Ms. Farley regarding plaintiff's increased "tumor markers." However, as plaintiff's direct supervisor, Ms. Farley was aware of plaintiff's increased "tumor markers" and Ms. Smith's decision to discharge plaintiff would have taken into consideration discussions she had with Ms. Farley, Ms. Farley's knowledge of plaintiff's health, and Ms. Farley's recommendations regarding plaintiff and the circumstances surrounding plaintiff's employment.

In addition, both Ms. Smith and Ms. Farley were aware that plaintiff had previously been diagnosed with cancer, had previously undergone cancer treatments, and, on several occasions, had requested both a layoff and time off from work as a result of her cancer and cancer-related medical treatments. Unlike in *Simpson*, where the facts of the opinion do not indicate a sudden escalation of the plaintiff's health problems, in this case, plaintiff's diagnosis of increased "tumor markers" could reasonably be seen by the jury as a sudden and significant escalation of plaintiff's health problems, followed, days later, by her discharge. Thus, the timing of plaintiff's discharge, ten days after informing Ms. Farley of the return and escalation of her cancer, is evidence supporting the inference that something material had changed in regard to defendant's perception of plaintiff, her health, and her employment. Further, plaintiff also asked Ms. Farley for several days off from work after plaintiff advised Ms. Farley of her increased "tumor markers." Ms. Farley agreed to the time off, as long as plaintiff produced a work release from her oncologist. The following week, plaintiff took the requested time off from work in order to meet with her oncologist. From the "tumor markers" comment to the requested time off from work, the jury could have reasonably

inferred that defendant regarded plaintiff as disabled, someone who in the future would be requesting more time off from work due to her the return of her cancer and the necessary treatments that disease requires.

Defendant points out that plaintiff had been previously diagnosed with cancer and that defendant, with full knowledge of plaintiff's cancer, re-hired plaintiff and also permitted her to take time off for treatments. However, while counsel for defendant was free to point this out to the jury, and did in fact do so, the jury could reasonably have inferred from the evidence presented by plaintiff that defendant's perception of plaintiff, how it "regarded" her as someone with a disability, caused the discharge and that the return of plaintiff's cancer and her stated need for future cancer-related treatments precipitated that action.

Also distinguishable from *Simpson* is plaintiff's outright denial that anyone ever informed her of any customer complaints or work performance issues, the reason defendant gave for plaintiff's discharge. In *Simpson*, while the plaintiff disputed the conclusion the employer drew from investigating the circumstances surrounding the incident and out of which the employer's discharge decision arose, the plaintiff did not dispute that the incident actually occurred. *Simpson*, 2009 WL 4981684, at *1-*3. Moreover, the plaintiff conceded that he had not complied with his duty to properly complete the electronic charting of his patients and the other employee placed on administrative leave following the incident was also discharged. *Id.* In this case, plaintiff denied ever being presented with any customer complaints or work performance issues, despite defendant's assertions to the contrary, and

argued that most of the work performance notices produced by defendant were dated following plaintiff's "tumor markers" remark.

Plaintiff also produced sufficient evidence by which a reasonable jury could have found defendant's reason to be pretext. Defendant claimed that plaintiff's discharge was a result of her poor work performance and customer complaints. However, through her own testimony, plaintiff disputed that she was ever informed of such issues or complaints and indicated that three of the four documents defendant produced and containing the complaints and warnings were dated after plaintiff's "tumor marker" conversation with Ms. Farley.

To establish that the defendant's reason is pretext, the plaintiff must generally show: (1) that the proffered reason has no basis in fact; (2) the reason did not actually motivate the defendant's challenged conduct; or (3) the reason was insufficient to warrant the challenged conduct. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc) (internal quotations and citation omitted). Keeping in mind the standard by which this issue is before the Court, and noting that a motion for judgment as a matter of law may only be granted "if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party[,]" *Radvansky*, 496 F.3d at 614, the Court finds that a jury could have concluded that the reasons proffered by defendant had no basis in fact. In other words, a reasonable jury could conclude that defendant's reasons for plaintiff's discharge, work performance issues and customer complaints, were not the real reasons. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of

13

the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

## C.     Plaintiff's Age Discrimination Claim Under the ADEA/THRA

### 1.     Discrimination Based on Age

The ADEA/THRA makes it unlawful for employers to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a).  To establish a prima facie case of age discrimination, the plaintiff must show the following: (1) membership in a protected class; (2) an adverse employment action; (3) qualification for the position of employment; and (4) that the plaintiff was replaced by someone outside the protected class.  *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008).  The plaintiff can satisfy the fourth prong by showing that the plaintiff was "treated differently from similarly situated employees outside the protected class."  *Id.* (quoting *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004)).

Defendant argues that the facts of this case, particularly, plaintiff's employment history with defendant, warrant a new trial or an altered or amended judgment because the evidence at trial did not show that defendant based its employment decision on plaintiff's age.  In its previous memorandum opinion and order on defendant's motion for summary judgment, the Court determined that plaintiff had stated a prima facie case for discrimination based on age in violation of the ADEA [Doc. 84].  In the briefing of that motion and at trial,

plaintiff argued that she was similarly situated to Ashley Johnson ("Johnson"), an employee who was in the same department as plaintiff and who was 18 when she was hired by defendant in 2005. Plaintiff argued that Johnson was treated differently than plaintiff because Johnson's employee records indicated poor work performance, warnings of suspensions, and various layoffs, and, unlike plaintiff, Johnson was not discharged.

The Court will not revisit its prior determination that plaintiff established a prima facie case for discrimination based on age, as the evidence at trial indicated that Johnson's work history records contained a number of work performance violations including poor attendance, un-excused absences, and warnings related to the quality of her work, including warnings and work performance notations similar to those defendant points to as its reasons for plaintiff's discharge–yet Johnson was not discharged. However, whether plaintiff established pretext presents a closer question.

Once the plaintiff has established a prima facie case of age discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1113-14 (6th Cir. 2001) (stating that "[a] plaintiff's burden in establishing a prima facie case is not intended to be an onerous one") (citation omitted). If the defendant makes the appropriate showing, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason was a pretext for discrimination. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-55 (1981). To establish that a defendant's reason is pretext, the plaintiff must generally show: (1) that the proffered reason has no basis in fact; (2) the

15

reason did not actually motivate the defendant's challenged conduct; or (3) the reason was insufficient to warrant the challenged conduct. *Wexler*, 317 F.3d at 576.

Defendant argues that plaintiff presented no evidence that its proffered reasons for plaintiff's discharge had no basis in fact, were insufficient to warrant the discharge, or did not actually motivate the discharge decision. Plaintiff, on the other hand, asserts that the work performance reports and the absence of any discipline of Johnson, given her employee work records, demonstrate "how selective defendant was in finding a basis for discipline" [Doc. 122, p. 3]. In other words, plaintiff argues that she was treated differently than Johnson because of her age and that she was discharged for essentially the same conduct Johnson engaged in. Plaintiff argues that these facts establish the third showing of pretext as described in *Wexler* and raise the reasonable inference that defendant's proffered reasons were insufficient to warrant the challenged conduct.

Upon review and consideration of the parties' arguments, the Court's review and recollection of the evidence presented at trial, the applicable law, and the standard of review the Court applies to a motion for new trial or a motion to amend/alter judgment, the Court finds that a reasonable jury could have inferred illegal discrimination from the evidence presented by plaintiff. As stated in *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078 (6th Cir. 1994) (overruled on other grounds, *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009)):

> The third showing [that a defendant's reason was insufficient to warrant the challenged conduct] is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not

16

in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals [that a defendant's proffered reason had no basis in fact or was insufficient to warrant the challenged conduct] are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." *Hicks*, 509 U.S. at 511. As *Hicks* teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.

*Manzer*, 29 F.3d at 1084.

As an initial matter, the Court notes that defendant has indicated that plaintiff was 50 years old when she was hired, age 60 when she was rehired, and age 62 when she was discharged. Defendant compares plaintiff's age to the age of Ms. Smith, who was over age 60 at the time of plaintiff's discharge, and Ms. Farley, who was age 53 at the time of plaintiff's discharge. However, while relevant to the Court's consideration, the similar ages of the plaintiff and her supervisors are not determinative of this issue. Plaintiff was differently situated then either of these women and performed different duties. Ms. Smith and Ms. Farley's consideration of plaintiff's age and how her age related to her employment would have been different compared with their perceptions of their own ages and the duties of their jobs. As such, the more appropriate comparison in this case is to the ages of plaintiff and Johnson, individuals who performed similar job duties but were different ages.

In this case, Johnson performed much of the same housekeeping duties as plaintiff and had a number of notices and warnings in her employment record for absences from work, late-arrivals, and poor work performance. However, while defendant produced similar

warning notices for plaintiff and argued that plaintiff had been verbally informed of these warnings, plaintiff denied ever being presented with warning notices and denied ever being given any verbal warnings. Thus, the jury was presented with evidence that the two employees, similarly situated in their job performance duties and with similar work performance notices and warnings–but different in regard to their respective ages–were treated differently. As indicated in *Manzer*, a reasonable jury could have inferred, from this evidence, that the reasons given by defendant were insufficient grounds for a discharge when these reasons were considered along with defendant's treatment of Johnson.

## 2.        Whether Defendant's Conduct was "Willful"

With this in mind, the Court now turns to defendant's related argument that there was no evidentiary support for the jury's finding of "willfulness" in respect to plaintiff's claim of age discrimination–that plaintiff presented no evidence that defendant knew its July 2007 discharge of plaintiff was a violation of the age discrimination laws nor any evidence that defendant acted in reckless disregard of these laws. In response to defendant's argument, plaintiff responds that:

> For the same reasons, the defendant's argument that there is no basis for the jury finding of willfulness, is without merit. The finding is consistent with the conclusion reached by the jury on other issues presented. It is difficult to imagine how the jury could have reached a different conclusion on the willfulness issue.

[Doc. 122, p. 3].

Under the ADEA, liquidated damages, which are "punitive" in nature, are permitted only if an employer's violation of the ADEA is "willful." *See* 29 U.S.C. § 626(b); *Trans*

*World Airlines v. Thurston ("Thurston")*, 469 U.S. 111, 125 (1985). To demonstrate willfulness, a plaintiff must prove by the preponderance of the evidence that the defendant either "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Thurston*, 469 U.S. at 126 (internal citation and quotes omitted). The U.S. Supreme Court has held that it is not sufficient to show that the employer "knew of the potential applicability of the ADEA," *id.* at 127, for such a broad standard would "virtually obliterat[e] any distinction between willful and nonwillful violations" and erode the "two-tiered liability scheme" contemplated by Congress. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 614-15 (1993) (internal citation omitted). To support a claim for liquidated damages, it is not even enough to show that the employer "acted without a reasonable basis for believing that it was complying with the statute," *Shalka v. Fernald Envtl. Restoration Mgt. Corp.*, 178 F.3d 414 (6th Cir. 1999), because willfulness requires at least recklessness. *See McLaughin v. Richland Shoe Co.*, 486 U.S. 128, 134-35 (1988) (clarifying the *Thurston* standard).

With these principles in mind, the Court concludes that there was sufficient evidence to satisfy the above discussed standard of willfulness. First of all, there is no evidence that defendant did not know of the applicability of the ADEA or that defendant did not know the ADEA applied to plaintiff. Second, the jury could have reasonably concluded that defendant knew it was acting in violation of the ADEA when it treated Johnson, a younger employee, differently than it treated plaintiff, an older employee. At trial, defendant argued that plaintiff had been warned of her poor work performance and given notice of customer

complaints before her discharge. Plaintiff denied any knowledge of such warnings and denied ever being shown the warning notices and customer complaints. This denial could have led the jury to infer that defendant, knowing of the applicability of the ADEA, recklessly or willfully disregarded that law in its discharge of plaintiff and that such warnings notices and customer complaints were pretext.

### D.    Other Grounds for a New Trial Pursuant to Rule 59(e)

#### 1.    Testimony of Dr. Grossman

Defendant also asserts that the Court erred when it permitted the testimony of plaintiff's oncologist, Dr. Grossman, regarding plaintiff's history and her current condition of cancer. Defendant submits that this testimony had no relevance to plaintiff's claims and only served to impassion the jury to award damages in favor of plaintiff based on sympathy and emotion and in contravention of the evidence. Accordingly, defendant submits that Dr. Grossman's testimony should have been excluded pursuant to Rules 401, 402, and 403 of the Federal Rules of Evidence.

The Court disagrees. Prior to trial, the Court granted in part and denied in part defendant's request to wholly exclude Dr. Grossman from testifying [Doc. 86, p. 11]. The Court limited his testimony to issues which would be relevant at trial, including, but not limited to, plaintiff's capacity to work and events and dates pertinent to this case [*id.*]. One relevant issue at trial was what Ms. Farley knew about plaintiff's cancer and the extent to which this cancer affected plaintiff's work and well-being. For instance, the fact that plaintiff, on several occasions in the past, requested time off and a layoff due to her cancer

treatments. While defendant asserts that plaintiff never claimed she had problems with performing her work because of her cancer, the Court notes that the necessity of taking a layoff for health reasons and plaintiff's requests for days off from work because of her cancer and her cancer-related treatments do indeed constitute aspects of her cancer that affected plaintiff's ability to work.

In addition, Dr. Grossman's testimony about plaintiff's experiences with cancer confirmed what Ms. Farley, Ms. Smith, and plaintiff said regarding plaintiff's history of cancer and the relevant periods in plaintiff's employment and in her life that were affected by the disease. Dr. Grossman's testimony regarding plaintiff's current condition of cancer was also relevant to the issue of whether plaintiff was entitled to recover for mental or emotional suffering as a result of her discharge because of what she feared in the future regarding her cancer. Accordingly, the Court finds no error in the admission of Dr. Grossman's testimony.

### 2. "Same Actor" Inference

Defendant also submits that the Court erred in not including defendant's proposed jury instruction on the "same actor" inference. The "same actor" inference instruction allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee. *See Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463-64 (6th Cir. 1995). The inference is not mandatory and may be vitiated by other evidence. *Wexler*, 317 F.3d at 573.

Prior to submission of this case to the jury, the Court carefully considered defendant's proposed jury charge on the "same actor" inference instruction. The Court noted that there were some facts supporting the inference–including the fact that Ms. Smith hired and rehired plaintiff and Ms. Smith was also the ultimate decision maker in regard to plaintiff's discharge. However, the Court also concluded that there were other facts that qualified the strength of this inference, including the fact that plaintiff's circumstances, namely, her cancer, had materially changed since her last rehire. On balance, the Court declined to give the "same actor" inference instruction, but advised defense counsel that it could argue that inference and placed no limits on defense counsel's ability to do so. Rather, defendant was free to argue to the jury the same actor inference and free to argue that because the same person hired and then discharged plaintiff, such circumstances weigh against a finding of discrimination.

Defendant cites the *Buhrmaster* case in its argument that it was error for the Court not to instruct the jury on the "same actor" inference. But the Court notes that *Buhrmaster* did not hold that it was error for the court to decline to give the "same actor" inference instruction; rather, the holding in *Buhrmaster* was that it was not error for the court to give the "same actor" instruction. The Court has found nothing indicating that it was required to instruct the jury on the "same actor" inference and in error for not doing so. As the Seventh Circuit observed in *Gehring v. Case Corp.*, 43 F.3d 340 (7th Cir. 1994):

> [A] judge need not deliver instructions describing all valid legal principles. Especially not when the principle in question describes a permissible, but not obligatory, inference. Many an inference is

> permissible.  Rather than describing each, the judge may and usually
> should leave the subject to the argument of counsel.

*Gehring*, 43 F.3d at 343.  Accordingly, the Court concludes that it did not err in declining

defendant's request to give the "same actor" inference and such is not grounds for a new trial.

### E.    Answers of Jury Inconsistent with Each Other and the Jury Verdict

Defendant has also moved, pursuant to Rules 59 and 49 of the Federal Rules of Civil

Procedure, for a new trial because the jury verdict answers were internally inconsistent and

inconsistent with the Court's instructions.  Defendant argues that the jury either disregarded

the Court's instructions or failed to adhere to them by finding that plaintiff was discharged

based on the ADEA's "but for" standard, but also finding liability on the basis of disability

under the ADA's "solely" standard.  Defendant does not dispute the "accuracy" of the

Court's instructions to the jury but submits, based on those instructions and the jury's verdict,

that the jury should not have been able to find both that "but for" plaintiff's age, she would

not have been discharged, and also that she was discharged "solely" by reason of her

disability.

Plaintiff responds that defendant did not address any alleged inconsistencies in the

jury instructions or in the verdict form in the charge conferences, before the jury was

charged, after the trial when the jury delivered its verdict, or before the jury was discharged.

Accordingly, plaintiff submits that defendant has waived the ability to claim that the verdict

was inconsistent.

Rule 49(b) provides that:

> (2)    Verdict and Answers Consistent.  When the general verdict and the answers are consistent, the court must approve, for entry under Rule 58, an appropriate judgment on the verdict and answers.

> (3)    Answers Inconsistent with the Verdict.  When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may:

>> (A)    approve, for entry under Rule 58, an appropriate judgment according to the answers, notwithstanding the general verdict;

>> (B)    direct the jury to further consider its answers and verdict; or

>> (C)    order a new trial.

> (4)    Answers Inconsistent with Each Other and the Verdict.  When the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial.

Fed. R. Civ. P. 49(b).

The Sixth Circuit considered an issue regarding inconsistent jury verdicts in *Radvansky* , 496 F.3d at 618-19; *see also Hendricks v. Office of Clermont County Sheriff*, 236 F. App'x 347, 350 (6th Cir. 2009) (citing *Radvansky* in its refusal to consider a Rule 49(b) objection after the jury was discharged).  In *Radvansky*, while noting a dearth of recent authority concerning Rule 49(b), the court noted that it appears that the Sixth Circuit has held that a party must make its Rule 49(b) objection prior to the district court discharging the jury.

*Radvansky*, 496 F.3d at 618. The *Radvansky* court stated this proposition in light of an unpublished opinion by the Sixth Circuit noting that:

> It is well-settled that if, after answers to special interrogatories are read, a party does not object to the discharge of the jury or raise any issue with respect to the jury's responses, that party should be deemed to have waived any objection as to inconsistency, ambiguity, or lack of clarity in the answers.

*Id.* (quoting *Central on Line Data Sys., Inc. v. Filenet Corp. ("Filenet")*, 99 F.3d 1138 (Table), 1996 WL 483031, at *11 (6th Cir. Aug. 23, 1996)). The *Radvansky* court also noted with approval the statement that "'[t]he purpose of [Rule 49(b)] is to allow the original jury to eliminate any inconsistencies without the need to present new evidence to a new jury. This prevents a dissatisfied party from misusing procedural rules and obtaining a new trial for an asserted inconsistent verdict.'" *Radvansky*, 496 F.3d at 618 (quoting *Filenet*, 1996 WL 483031, at *11); *see also Catalina v. City of Columbus*, Nos. 88-4187, 88-4089, 1989 WL 123240 (6th Cir. Oct. 17, 1989) (finding that a party had waived her objection to any perceived inconsistency by failing to enter an objection to the special verdict before the jury was discharged); *L &W, Inc. v. Shertech, Inc.*, 471 F.3d 1311 (Fed. Cir. 2006) (applying Sixth Circuit precedent and stating that, "[u]nder Sixth Circuit law, a party waives its objection to inconsistency in a jury's verdict if the party had an adequate opportunity to object but failed to do so").

As plaintiff has noted, defendant did not address the potential for inconsistent verdicts given the Court's instructions to the jury, either before the jury was charged, after the jury rendered their verdict, or before the jury was discharged. As such, based on the Sixth Circuit

precedent stated above, this Court finds that defendant waived its objections to inconsistent verdicts.

The Court also notes that defendant does not dispute the "accuracy" of the Court's instructions to the jury in light of the standard for liability under the ADEA, as articulated in *Gross v. FBL Financial Servs.*, 129 S. Ct. 2343 (2009), and the standard of liability under the ADA, as articulated in *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002). Further, defendant has not pointed the Court to any authority which states that a finding of discrimination under the ADEA forecloses the possibility of a finding of discrimination under the ADA, or the other way around. The Court notes that prior to the Supreme Court's decision in *Gross*, the Sixth Circuit analyzed a plaintiff's claims for both age and disability discrimination under the ADEA and the ADA, respectively, and at no place in the opinion did the court note that the two claims were inherently inconsistent. *See Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 454 (6th Cir. 2004). Accordingly, the Court has found no indication that *Gross* so changed the landscape that a finding of discrimination that would not have occurred "but for" the plaintiff's age, and a finding that a plaintiff was discharged "solely" because of a disability, are inherently inconsistent.

## III. Conclusion

For the reasons stated herein, defendant's Motion for Judgment Notwithstanding the Verdict, or in the Alternative, For a New Trial [Doc. 111] is **DENIED**, defendant's Motion for New Trial or to Alter/Amend Judgment [Doc. 113] is **DENIED**, and defendant's Motion

for New Trial Pursuant to Fed. R. Civ. P. 59 and 49 [Doc. 117] is also **DENIED**.  The

verdicts of the jury are **AFFIRMED**.

      IT IS SO ORDERED.


                s/ Thomas A. Varlan
                UNITED STATES DISTRICT JUDGE