UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LOIS TRENTHAM, )
)
    Plaintiff, )
) No.: 3:08-CV-23
v. ) (VARLAN/GUYTON)
)
HIDDEN MOUNTAIN RESORTS, INC., )
)
    Defendant. )

# MEMORANDUM OPINION AND ORDER

This litigation is an employment discrimination action between plaintiff, Lois Trentham, and defendant, Hidden Mountain Resorts, Inc. Presently before the Court are two post-trial motions [Docs. 101, 119] filed by defendant and one post-trial motion filed by plaintiff [Doc. 108]. The first motion is defendant's Motion to Order Reinstatement in Lieu of Front Pay ("defendant's motion for reinstatement") [Doc. 101]. Plaintiff has responded in opposition [Doc. 106], and defendant has filed a reply [Doc. 109]. The second motion is Plaintiff's Motion to Amend the Judgment to Allocate the Award of Compensatory Damages to the Plaintiff's Action Under the Tennessee Human Rights Act; to Add Liquidated Damages; and to Add Pre-Judgment Interest ("plaintiff's motion to amend judgment") [Doc. 108]. Defendant has responded in opposition [Doc. 110]. Plaintiff has not filed a reply and the time for doing so has passed. *See* E.D. TN. LR 7.1(a), 7.2. The third motion is defendant's Motion to Amend or Alter Judgment (Motion for Remittitur of Front Pay) ("defendant's motion for remittitur") [Doc. 119]. Plaintiff has responded in opposition [Doc.

129], and defendant has filed a reply [Doc. 129].  The motions are all ripe for determination and the Court now addresses the arguments contained within each.

**I.     Background**

This case went to trial on January 29, 2008 on plaintiff's employment discrimination claims under the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621, *et seq.*; the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101, *et seq.*, as amended by 42 U.S.C. § 1981a; the Tennessee Handicap Act (the "THA"), T.C.A. § 8-50-103; and the Tennessee Human Rights Act (the "THRA"), T.C.A. §§ 4-21-101, *et seq.* [*see* Doc. 1].  The jury returned a verdict for plaintiff on her claims under the ADA/THA and the ADEA/THRA [Doc. 100], finding that plaintiff was entitled to recover $51,186.00 in lost earnings and benefits through the date of the verdict (back pay); $133,228.00 for future lost earnings and benefits (front pay); and $65,586.00 in damages for pain and suffering, embarrassment and humiliation [*Id.*].  The jury also found that defendant's violation of the ADEA was willful and that plaintiff was entitled to punitive damages in the amount of $10,000.00 for its conduct in violation of the ADA [*Id.*; Doc. 105].

Following the trial, defendant filed three motions: a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial [Doc. 111], a motion for new trial or to alter/amend judgment [Doc. 113], and a motion for new trial pursuant to Fed. R. Civ. P. 59 and 49 [Doc. 117].  On July 13, 2010 [Doc. 140], the Court denied these motions, affirming the verdicts of the jury.  Defendant also filed the motion for reinstatement [Doc. 101] and the motion for remittitur [Doc. 119], and plaintiff filed the motion to amend

judgment [Doc. 108]–the motions to be addressed herein. On June 23, 2010, the Court held a motion hearing during which the parties presented argument regarding defendant's motion for reinstatement and defendant's motion for remittitur.

## II.     Analysis

### A.     Defendant's Motion for Reinstatement [Doc. 101]

In defendant's motion for reinstatement [Doc. 101], defendant asserts that reinstatement in this case is neither "infeasible or otherwise inappropriate" and moves the Court to order reinstatement of plaintiff in lieu of the jury's award of $133,228.00 in front pay. *See Carberry v. Monarch Marking Sys., Inc.*, 30 F. App'x 389, 395 (6th Cir. 2002). Plaintiff, on the other hand, contends that antagonism and hostility existed between the parties at the time of plaintiff's discharge, continued throughout the course of this litigation, and that such antagonism and hostility renders reinstatement infeasible and inappropriate. Accordingly, plaintiff argues that defendant's motion for reinstatement should be denied and plaintiff awarded front pay in the amount of $133,228.00, the amount determined by the jury.

The U.S. Court of Appeals for the Sixth Circuit has noted that in ADEA actions, "reinstatement is the presumptively favored equitable remedy." *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 398 (6th Cir. 1993) (citing *Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir. 1988)); *see also* 29 U.S.C. § 626(b) (giving the district court discretion to order reinstatement under the ADEA). However, while reinstatement should be granted in the ordinary case, *In re Lewis*, 845 F.2d 624, 630 (6th Cir. 1988), it is an equitable remedy which is not appropriate in every case, such as where the plaintiff has found other work, where

3

reinstatement would require displacement of a non-culpable employee, or where hostility would result. *Roush*, 10 F.3d at 398 (citation omitted). The Sixth Circuit has also recognized that front pay should not be awarded unless "reinstatement is infeasible or otherwise inappropriate." *Carberry*, 30 F. App'x at 395.

In defendant's pleadings and at the motion hearing, counsel for defendant argued that reinstatement of plaintiff is appropriate because: (1) there is no evidence of hostility or ill will towards plaintiff from her former supervisors or defendant's employees, and, even if hostility exists, it is a result of pre-trial litigation and the trial and such hostility generated by litigation is an insufficient reason to deny reinstatement; (2) upon reinstatement, plaintiff would not be supervised by her former supervisors but by an individual who had no role in her discharge; (3) plaintiff would have access to all the benefits she had during her prior employment; (4) and because defendant is "genuinely receptive to reinstatement." [*see* Docs. 101, 109]. Plaintiff, on the other hand, argues that hostility and antagonism existed not only during the pre-trial litigation period and throughout the trial, but was inherent in the events leading up to plaintiff's discharge, inherent in the circumstances of her discharge, continues to exist, and would exist should the Court order plaintiff to be reinstated. Plaintiff also asserts that a finding of hostility was implicit in the jury's determination that defendant acted "willfully" in its violation of the ADEA and acted with malice or reckless indifference in regard to plaintiff's rights under the ADA.

In order to determine whether reinstatement is feasible or appropriate in this case, the Court first notes that reinstatement of plaintiff would not displace a non-culpable employee.

The Court also notes that plaintiff has found other work, albeit, seasonal employment that pays a lower hourly rate and does not provide the same benefits as plaintiff's former employment with defendant. Thus, the key question for the Court to determine is whether hostility or antagonism existed between plaintiff and defendant at the time of her employment and discharge, whether hostility was inherent in the circumstances of her discharge, whether that hostility continued throughout the litigation and trial, and whether hostility would result from plaintiff's reinstatement.

It has been noted that "[h]ostility generated from the heat of litigation is not a sufficient reason to deny reinstatement." *Armsey v. Nestle Co., Inc.*, 631 F. Supp. 717, 720 (S.D. Ohio 1985) (citing *Dickerson v. Deluxe Check Printers, Inc.*, 703 F.2d 276, 281 (8th Cir. 1983)). To this end, the U.S. Court of Appeals for the Eighth Circuit has noted that "[t]o deny reinstatement to a victim of discrimination merely because of the hostility engendered by the prosecution of a discrimination suit would frustrate the make-whole purposes of Title VII. Antagonism between parties occurs as the natural by-product of any litigation." *Taylor v. Teletype Corp.*, 648 F.2d 1129, 1139 (8th Cir. 1981).

The Court does not doubt that plaintiff feels hostility towards defendant and its owners and employees. Nor does the Court doubt that plaintiff does not wish to return to any employment with defendant and does not wish to return to work with "those who had spoken so harshly and wrongly of her, and who finally, in her hour of need, fired her summarily without prior warning." [Doc. 106, p. 1]. A portion of this hostility is, in the words of the *Taylor* court, a "natural by-product" of the more than two-year long pre-trial litigation of this

case and a contentious trial. However, in addition to the hostility generated by the litigation and trial, the Court also concludes that the circumstances surrounding plaintiff's employment and her discharge were indicative of hostility and hostility would likely result were the Court to order reinstatement.

This is not a case in which there is evidence of a long period of open employer/employee hostility prior to plaintiff's discharge. Nor is this a case where plaintiff occupied a supervisory position over a large staff or would be returned to a position under the exact same supervisor. Rather, the primary impetus of hostility and antagonism generated by this case stems directly from the events surrounding plaintiff's discharge. Plaintiff was discharged a little more than a week after she found out about the return of her cancer and her "tumor marker" conversation with Ms. Farley. Plaintiff also presented evidence that she was treated differently than a similarly situated younger employee who was not discharged and who had similar work performance evaluations and customer complaints. Moreover, plaintiff argued at trial that she was never made aware of warnings regarding her work performance or customer complaints and she argued that most of the written warnings defendant produced were dated following her "tumor markers" conversation with Ms. Farley. These circumstances, defendant's awareness of the return of plaintiff's cancer, followed a week later by her discharge, and the evidence at trial that the reasons for her discharge were pretextual, are indicative of a hostile and antagonistic relationship at the time of plaintiff's discharge. Thus, in the span of two weeks, plaintiff was faced with the return of a potentially life-threatening disease and the end of her employment, two life-changing events that, even

when dealt with separately, cause most individuals significant stress and uncertainty. When these events are dealt with together, it is not unreasonable to the Court that plaintiff's stress and worries over her health, her stress and uncertainty over the loss of her job, and defendant's assertion that plaintiff was fired due to customer complaints and work performance issues that plaintiff maintains she was unaware of, aroused in plaintiff hostile feelings towards defendant, its owners and employees.

Moreover, the Court cannot ignore the jury's finding that defendant's conduct was willful and rose to the level at which the jury determined punitive damages were warranted. Further, while defendant asserts that plaintiff would occupy a different position and work under a different supervisor, the Court cannot disregard the fact that defendant is a relatively small company and Ms. Smith, one of the primary individuals to whom plaintiff attributed discriminatory behavior, is a co-owner and plaintiff would be supervised by an individual who is himself supervised by Ms. Smith's husband, also a co-owner.

Accordingly, the Court finds that hostility and antagonism was engendered by not only the litigation and the trial, but also by the circumstances of plaintiff's employment and her discharge. The Court thus concludes that hostility would likely result were plaintiff to be reinstated and therefore reinstatement is inappropriate.

### B. Plaintiff's Motion to Amend the Judgment [Doc. 108]

Federal Rule of Civil Procedure 59(e) permits the filing of motions to alter or amend a judgment. Fed. R. Civ. P. 59(e). "A district court may grant a Rule 59(e) motion to alter or amend judgment only if there is: '(1) a clear error of law; (2) newly discovered evidence;

(3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). In this case, plaintiff moves the Court to amend the judgment [Doc. 107] to allocate the award of compensatory damages to plaintiff's claim under the THRA, to add liquidated damages, and to add pre-judgment interest [Doc. 108]. The Court will consider each argument in turn.

### 1. Allocation of Compensatory Damages and Punitive Damages

The ADA limits the amount of damages that may be awarded to a prevailing plaintiff:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party –
>
> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000[.]

42 U.S.C. § 1981a (b)(3)(A). In this case, defendant is a company with more than 14 but less than 101 employees and the jury awarded plaintiff $65,586.00 in compensatory damages and $10,000.00 in punitive damages. Thus, pursuant to § 1981a(b)(3)(A), this amount exceeds the amount available under the ADA. In her motion, plaintiff argues that the jury's award of compensatory damages should be apportioned entirely to her claim for age discrimination under the THRA and her punitive damages award should be apportioned entirely to her ADA claim, thereby allowing plaintiff to obtain the full judgment awarded by the jury.

8

In support of this argument, plaintiff relies on *Johnson v. Fay Portable Bldgs., Inc.*, No: 3:02-CV-173, 2003 U.S. Dist. LEXIS 20905 (E.D. Tenn. Nov. 4, 2003), in which the court allocated the plaintiff's award of compensatory damages to his claim under the THRA and allocated the plaintiff's punitive damages award to his claim under Title VII. *Id.* at *8-*10. The *Johnson* court considered the limitation on damages imposed pursuant to 42 U.S.C. § 1981(b)(3), noted Title VII's express prohibition on limiting state remedies, and observed that the THRA and Title VII require nearly the same elements of proof and provide for nearly identical causes of action. *Id.* at *6-*8. The court then stated that refusing to allocate the jury's award of damages "would effectively limit the local jurisdiction's prerogative to provide greater remedies for employment discrimination than those Congress has afforded under Title VII." *Id.* at *8 (quoting *Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1349-50 (D.C. Cir. 1999)); *see also Hall v. Consol. Freightways Corp.*, 337 F.3d 669, 679-80 (6th Cir. 2003) (discussing Title VII and Ohio Rev. Code §§ 4112, *et seq.*).

Defendant, while recognizing the applicability of *Johnson*, argues that the evidence was insufficient to support the jury's verdicts and, given the proof at trial, the damages should not be front-loaded in respect to plaintiff's age discrimination claims. Accordingly, defendant requests the Court not to allocate plaintiff's award of damages but to amend the judgment based on a lack of evidence to support the jury's findings as to punitive damages under the ADA and/or liquidated damages under the ADEA.

Upon the Court's review of the case law, the rationale of *Johnson* and *Hall*, the cases cited therein, and the Court's own consideration of the purposes of the THRA and the ADA,

9

the Court agrees with the rationale of *Johnson* as it applies to plaintiff's claims under the ADA and the THRA. Accordingly, plaintiff's motion to amend the judgment [Doc. 108] is granted to the extent that the jury's award of compensatory damages shall be allocated to plaintiff's claim of age discrimination under the THRA and plaintiff's award of punitive damages shall be allocated to plaintiff's claim for disability discrimination under the ADA.

### 2. Liquidated Damages

The ADEA provides that the rights created by the Act are to be "enforced in accordance with the powers, remedies, and procedures" of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq. See Lorillard v. Pons*, 434 U.S. 575, 579 (1978). However, unlike the FLSA, under the ADEA, liquidated damages, which are "punitive" in nature, are permitted only if an employer's violation of the ADEA is "willful." *See* 29 U.S.C. § 626(b); 29 U.S.C. § 216(b) *Trans World Airlines v. Thurston ("Thurston")*, 469 U.S. 111, 125 (1985). Amounts owing as a result of a willful violation are to be treated as "unpaid minimum wages, or the unpaid overtime compensation owing to the employee[,]" 29 U.S.C. § 216(c), in other words–back pay damages.

In this case, the jury awarded plaintiff back pay damages in the amount of $51,186.00 [Doc. 100]. The jury also found that defendant willfully violated the laws against age discrimination [*Id.*]. Plaintiff argues that she is entitled to a like amount in liquidated damages as the jury's award of back pay. Defendant argues that the jury's finding that defendant willfully violated the laws against age discrimination is without merit and without support in the record. However, defendant submits, if the Court decides to award liquidated

damages, this award should serve as further consideration in the Court's determination of whether the jury's award of front pay damages was appropriate or excessive.

In light of the Court's prior determination that the jury's finding of willfulness was supported by sufficient evidence at trial [Doc. 140] and the applicable law pertaining to the damages and remedies available under the ADEA, the Court will grant plaintiff's request to add liquidated damages to the judgment in the amount of $51,186.00.

### 3. Pre-Judgment Interest

An award of pre-judgment interest in this case is within the discretion of the trial court. *Myint v. Allstate*, 970 S.W.2d 920, 927 (Tenn. 1998); *see* T.C.A. § 47-14-123. In utilizing its discretion regarding whether to award pre-judgment interest, a court must first consider the principles of equity. *Myint*, 970 S.W.2d at 927.

> Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing.

*Id.* Pre-judgment interest may be appropriate where the obligation is certain or where it can be ascertained by a proper accounting. *Id.* The court may also consider whether the defendant reasonably disputed the obligation, either its amount or the fact of the obligation. *Id.*; *see also Alexander v. Inman*, 974 S.W.2d 698, 698 (Tenn. 1998). Finally, the test for determining whether the amount of damages is certain "is whether the amount of damages

is ascertainable by computation or any recognized standard of valuation." *Myint*, 970 S.W.2d at 928.

In light of the fact that the jury awarded plaintiff back pay, front pay, compensatory damages, and punitive damages, and because plaintiff has obtained liquidated damages due to the jury's finding of willfulness, the Court is of the opinion that plaintiff has been compensated and made whole by the jury's award and thus, the Court does not find it necessary to award plaintiff pre-judgment interest in order to make her whole. *See, e.g., Watson v. Food Lion, Inc.*, 147 F. Supp. 2d 883, 891 (E.D. Tenn. 2000) (holding, in an age discrimination case under the ADEA and the THRA and following a jury verdict in the plaintiff's favor, that no pre-judgment interest would be awarded due to the jury's award of plaintiff's full back pay request). Thus, to the extent plaintiff has requested an award of pre-judgment interest, that request will be denied.

### C. Defendant's Motion for Remittitur [Doc. 119]

Defendant has moved the Court, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, for remittiur of the front pay award because defendant argues that the award was excessive in light of the evidence [Doc. 119]. As stated above, a district court may alter or amend a judgment only if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or a need to prevent manifest injustice. *Henderson*, 469 F.3d at 496 (citation omitted).

Defendant argues that the front pay award should be reduced because: Social Security and employer-financed benefits should not have been included; the jury simply parroted the

highest numbers provided by plaintiff's expert; plaintiff initially told the expert she only intended to work only until age 66, not age 70.5; and because plaintiff failed to mitigate her damages by not accepting comparable employment and defendant's offer of reinstatement. Plaintiff argues that the Court should accept the jury's determination of the amount of front pay because: plaintiff properly mitigated her damages by obtaining other employment; the jury's inclusion of Social Security and other benefits in the front pay award was proper; and because plaintiff's opposition to reinstatement should not affect the determination of whether plaintiff is entitled to front pay and in what amount.

After thoroughly reviewing the record, the Court finds that remittitur of the front pay award is not appropriate in this case. Plaintiff presented the jury with testimony, evidence, and argument pertaining to what plaintiff asserted was the appropriate amount of front pay. Defendant presented testimony, evidence, and argument challenging this amount. Plaintiff has obtained other employment since her discharge and the Court does not agree that plaintiff failed to mitigate her damages, despite the fact that her replacement job does not provide her the same wages or benefits as her prior job with defendant. Finally, and similar to the Court's finding that reinstatement in this case is not feasible or appropriate, the Court does not find plaintiff's rejection of defendant's offer of reinstatement to be unreasonable in light of the hostility that is likely to result should plaintiff be reinstated. Accordingly, the Court declines to reduce the front pay award determined by the jury.

## III. Conclusion

Accordingly, and for the reasons stated herein, defendant's Motion to Order Reinstatement in Lieu of Front Pay [Doc. 101] is **DENIED** and defendant's Motion to Amend or Alter Judgment (Motion for Remittitur of Front Pay) [Doc. 119] is **DENIED**. Plaintiff's Motion to Amend the Judgment to Allocate the Award of Compensatory Damages to the Plaintiff's Action Under the Tennessee Human Rights Act; to Add Liquidated Damages; and to Add Pre-Judgment Interest [Doc. 108] is **GRANTED** to the extent that the jury's award of compensatory damages shall be allocated to plaintiff's claim under the THRA, **GRANTED** to the extent that the jury's award of punitive damages shall be allocated to plaintiff's claim under the ADA, **GRANTED** to the extent that liquidated damages in the amount of $51,186.00 shall be added to the judgment, and **DENIED** to the extent that plaintiff shall not be entitled to pre-judgment interest.

Thus, and in accordance with this Order, the Clerk of Court is **DIRECTED** to **AMEND** the judgment [Doc. 107] as follows:

> IT IS ORDERED AND ADJUDGED that the jury unanimously finds that plaintiff, LOIS TRENTHAM recover of the defendant, HIDDEN MOUNTAIN RESORTS, INC., damages for back pay in the amount of Fifty-One Thousand, One Hundred Eighty-Six Dollars ($51,186.00), damages for front pay in the amount of One Hundred Thirty-Three Thousand, Two Hundred Twenty-Eight Dollars ($133,228.00) and compensatory damages, allocated to plaintiff's claim of age discrimination under the Tennessee Human Rights Act, T.C.A. §§ 4-21-101, *et seq.*, in the amount of Sixty-Five Thousand, Five Hundred Eighty-Six Dollars ($65,586.00).
>
> The jury also finds that the defendant, HIDDEN MOUNTAIN RESORTS, INC., willfully violated the Age Discrimination in

Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.*, in its conduct towards plaintiff, LOIS TRENTHAM, and plaintiff is entitled to liquidated damages in the amount of Fifty-One Thousand, One Hundred Eighty-Six Dollars ($51,186.00).

The jury further finds that the defendant, HIDDEN MOUNTAIN RESORTS, INC., acted against the plaintiff, LOIS TRENTHAM, with malice or reckless indifference to her rights and plaintiff, LOIS TRENTHAM, is entitled to punitive damages, allocated to plaintiff's claim of disability discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*, as amended by 42 U.S.C. § 1981a, in the amount of Ten Thousand Dollars ($10,000.00).

The Clerk is **DIRECTED** to enter a final amended judgment accordingly.

IT IS SO ORDERED.

                                                s/ Thomas A. Varlan
                                                UNITED STATES DISTRICT JUDGE